IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RUTH MORRISON,**
    **Plaintiff,**

v.

Case No. 2:03-CV-729
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Norah McCann King

**BROOKSTONE MORTGAGE
CO., INC., et al.,**
    **Defendants.**

**OPINION AND ORDER**

This matter is before the Court on the Motion to Dismiss or, alternatively, for Summary Judgment filed by Defendant Interfirst Wholesale Mortgage Lending (Doc. #57) and on the Plaintiff's Second Motion for Class Certification (Doc. #50). For the reasons that follow, the Defendant's motion is granted and the Plaintiff's motion is denied as moot.

**I.**

Plaintiff, Ruth Morrison ["Plaintiff"], brings this action on behalf of herself and a purported class of individuals challenging certain charges, costs and/or fees associated with a residential real estate mortgage refinancing loan. The Defendants in this case are Brookstone Mortgage Company ["Brookstone"], a provider of residential mortgage loans, and Interfirst Wholesale Mortgage Lending ["Interfirst"][1], which funds residential mortgage loans. In her Second Amended Complaint, filed on September 15, 2004, Plaintiff asserts a claim for herself

---

[1] Interfirst is a trade name for ABN AMRO Mortgage Group, which funds residential mortgage loans. For simplicity sake, the Court refers to the Defendant as "Interfirst."

only under the Homeowner's Equity Protection Act, part of the Truth in Lending Act, 15 U.S.C. § 1601, *et seq*. Plaintiff asserts purported class claims for alleged violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.*, as well as state law claims for alleged violations of the Ohio Mortgage Loan Act, R.C. Chapter 1321.52, *et seq.*, the Ohio Consumer Sales Practices Act, R.C. Chapter 1345, fraud and illegal contract. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

Plaintiff is a resident of Zanesville, Ohio. She alleges that, on August 14, 2002, Defendant Brookstone "negotiated and originated a federally-related home refinancing mortgage loan for [Plaintiff] through its ongoing business relationship with Interfirst." (*Second Am. Complaint* at ¶ 10). According to Plaintiff, Interfirst determined which loan product, credit terms, fees, charges and costs would be supplied to Brookstone. (*Id.* at ¶ 11). Plaintiff claims that the "total points and fees charged [Plaintiff] by Brookstone and Interfirst, as ratified and approved by both, exceeded both $500.00 in amount and 8 % of the total loan amount." (*Id.* at ¶ 12). Plaintiff alleges that Defendants "wrongly imposed and collected illegal, excessive, unearned, unreasonable and/or unauthorized non-interest charges, costs, and/or fees" (*Id.* at ¶ 14), including "overcharging for split settlement costs paid to obtain a credit report and to business entities not licensed to practice law in this state for preparing legal documents." (*Id.* at ¶ 15). As a result, Plaintiff claims that she will pay $211,640.69 over the life of the loan, while the existing mortgage refinanced aggregated only $192,895.57. (*Id.* at ¶ 16).

On September 28, 2004, Plaintiff filed a Second Motion for Class Certification, pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3). On October 4, 2004, Defendant Interfirst filed a Motion to Dismiss or, alternatively, for Summary Judgment with respect to Plaintiff's claims against it.

2

The Court first considers the merits of Defendant Interfirst's motion.

## II.

### A. Interfirst's Motion to Dismiss or, Alternatively, for Summary Judgment

#### Standard of Review

A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) "should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Nishiyama v. Dickson County*, 814 F.2d 277, 279 (6th Cir.1987) (*en banc*). In reviewing the motion for dismissal, this Court must construe the complaint liberally in the non-movant's favor and accept as true all factual allegations and permissible inferences therein. *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir.1976). A "complaint need not set down in detail all the particularities of a plaintiff's claim," *Westlake*, 537 F.2d at 858, the complaint must give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47. Thus, a 12(b)(6) motion tests whether the plaintiff has stated a claim for which the law provides relief. *Cheriee Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir.1994). Consequently, a complaint will not be dismissed pursuant to Rule 12(b)(6) unless there is no law to support the claims made, the facts alleged are insufficient to state a claim, or there is an insurmountable bar on the face of the complaint.

The rule provides that if, in connection with a motion made under Rule 12(b)(6) "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . ." Fed. R. Civ. P. 12(b).

### Plaintiff's Claims against Interfirst

#### 1. Real Estate Settlement Procedures Act ["RESPA"]

Plaintiff claims violations of RESPA, specifically 12 U.S.C. § 2603 and § 2607, for alleged "excessive credit report charges and the illegal, excessive, and not lawfully earnable document preparation fees . . . ." (*Second Am. Compl.* at ¶ 53). According to Plaintiff, under § 2607(d), she is entitled to recover from Defendants "three times the amount of these settlement charges, in addition to litigation costs and a reasonable attorney fee." (*Id.* at ¶ 54). Defendant Interfirst moves to dismiss Plaintiff's RESPA claims on the basis that § 2603 does not provide a private cause of action and, since there is no allegation that overcharges were shared or split with Interfirst, Plaintiff fails to state a claim under § 2607.

##### a. § 2603

Section 2603 of RESPA provides for the use of a standard form for the statement of settlement costs to be used in connection with real estate transactions in the United States which involve federally related mortgage loans. The statute states, in pertinent part:

> Such form shall conspicuously and clearly itemize all charges imposed upon the borrower and all charges imposed upon the seller in connection with the settlement and shall indicate whether any title insurance premium included in such charges covers or insures the lender's interest in the property, the borrower's interest, or both. The Secretary [of Housing and Urban Development] may, by regulation, permit the deletion from the form prescribed under this section of items which are not, under local laws or customs, applicable in any locality, except that such regulation shall require that the numerical code prescribed by the Secretary be retained in forms to be used in all localities. Nothing in this section may be construed to require that that part of the standard form which relates to the borrower's transaction be furnished to the seller, or to require that that part of the standard form which relates to the seller be furnished to the borrower.

4

>(b) The form prescribed under this section shall be completed and made available for inspection by the borrower at or before settlement by the person conducting the settlement, except that (1) the Secretary may exempt from the requirements of this section settlements occurring in localities where the final settlement statement is not customarily provided at or before the date of settlement, or settlements where such requirements are impractical and (2) the borrower may, in accordance with regulations of the Secretary, waive his right to have the form made available at such time. Upon the request of the borrower to inspect the form prescribed under this section during the business day immediately preceding the day of settlement, the person who will conduct the settlement shall permit the borrower to inspect those items which are known to such person during such preceding day.

12 U.S.C. § 2603(a), (b). It is clear that there is no express cause of action created by Congress under § 2603. Thus, the question is whether there is an implicit cause of action created by the statute.

In *Cort v. Ash*, 422 U.S. 66, 78 (1975), the Supreme Court outlined four factors for consideration of whether an implied statutory cause of action exists.

>First, is the plaintiff one of the class for whose especial benefit the statute was enacted, that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

Since the *Cort* decision, the Supreme Court has held that the focus of the four factor analysis is determined by consideration of one factor - - congressional intent. The other *Cort* factors are relevant insofar as they aid in determining congressional intent. See *Touche Ross & Co. v. Reddington*, 442 U.S. 560, 575-76 (1979); *Thompson v. Thompson*, 484 U.S. 174, 189 (1988). In *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001), the United States Supreme Court observed that,

5

> [l]ike substantive federal law itself, private rights of action to enforce federal law must be created by Congress. The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative. Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.

Thus, "unless this congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist." *Ellison v. Cocke County, Tenn.*, 63 F.3d 467, 470 (6th Cir.1995) (citations omitted).

The Court finds nothing in the language or structure of § 2603 to support Plaintiff's argument that Congress intended to create a private cause of action for violation of this provision. A review of the RESPA statute shows that Congress provided private civil remedies for violations of certain provisions, *see e.g.*, 12 U.S.C. §§ 2605(f), 2607(d)(2), (5) and 2608(b). In the Court's view, the fact that Congress did not include a remedy provision for disclosure requirements made under § 2603 or § 2604 strongly suggests that no such remedy should be implied. *Accord Reese v. 1st Metropolitan Mortgage Co.*, No. 03-2185-KHV, 2003 WL 22454658 at *4 (D. Kan. October 28, 2003).

In her Memorandum *contra,* Plaintiff appears to concede that no private right of action exists under § 2603. She argues, however, that Defendants' alleged failure to make disclosures under § 2603 is able to be remedied through a common law fraud claim. The Court disagrees. Such a result would improperly circumvent the Court's holding with respect to Plaintiff's claim under § 2603. In sum, Defendant Interfirst is entitled to judgment as a matter of law on Plaintiff's § 2603 RESPA claim.

6

### b. § 2607

Section 2607 of RESPA prohibits "any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person." 12 U.S.C. § 2607(a). The statute also prohibits the splitting of "any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." § 2607(b). Section 2607(c) outlines payments which are acceptable under RESPA and § 2607(d) outlines the penalties for violations of section 2607. Interfirst argues that Plaintiff's claim under § 2607 fails as a matter of law because Plaintiff does not allege that Defendant Brookstone split or shared any fees or charges with Interfirst.

A review of the Second Amended Complaint reveals that there is no allegation that a fee or charge was split with Interfirst. In her Memorandum *contra*, Plaintiff argues that "Brookstone improperly split or shared the $65.00 credit report charge with a third party, the credit reporting agency from which a credit report was obtained . . . ." (*Memorandum contra* at 38). Plaintiff makes no allegation in the Second Amended Complaint and no argument in response to the Motion to Dismiss that Interfirst shared in any fee or charge so as to support a claim under § 2607. Consequently, Interfirst is entitled to judgment as a matter of law on this aspect of the Plaintiff's § 2607 RESPA claim.

## 2. Home Owner's Equity Protection Act ["HOEPA"]

Plaintiff claims, on behalf of herself only, that Defendants violated HOEPA by charging her over 8% of the loan amount in settlement fees and costs. Defendant Interfirst argues that this claim fails as a matter of law.

HOEPA is an amendment to the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* The law requires that certain disclosures be made, including certain terms and admonitions regarding a "high cost mortgage." 15 U.S.C. § 1602(aa). A credit transaction secured by the consumers principal dwelling is a "high cost mortgage" when the points and fees exceed the greater of 8 % of the total loan amount or $400.00. 15 U.S.C. § 1602(aa)(1)(B). Points and fees are defined by the statute to include

> (A) all items included in the finance charge, except interest or the time-price differential;
> (B) all compensation paid to mortgage brokers;
> (C) each of the charges listed in section 1605(e) of this title (except an escrow for future payment of taxes), unless--
> (i) the charge is reasonable;
> (ii) the creditor receives no direct or indirect compensation; and
> (iii) the charge is paid to a third party unaffiliated with the creditor; and
> (D) such other charges as the Board determines to be appropriate.

§ 1602(aa)(4). Required disclosures for a high cost mortgage must be made not less than three business days prior to the transaction's consummation. 15 U.S.C. § 1639(b)(1).

Defendant Interfirst argues that the loan is not a high cost mortgage for purposes of HOEPA because the costs and fees paid by Plaintiff were 6.48% of the loan amount. The Settlement Statement identifies the loan amount as $208,000.00. (Exhibit C attached to *Interfirst's Motion*). The settlement charges are listed as $17,109.66. Interfirst argues that because Plaintiff was given a broker credit in the amount of $3,640.69, which is also listed on the

Settlement Statement, her costs at closing were $13,468.97, which is 6.48% of the total loan amount. Plaintiff acknowledges the credit given but nevertheless argues that because the charges exceeded 8% prior to the credit, Interfirst should be liable for failing to make the requisite HOEPA disclosures three days before closing. In response, Interfirst states that because the costs at closing did not exceed 8% of the total loan, HOEPA was not triggered and the disclosures were not required to be made.

Based on the undisputed evidence, it is clear that the charges Plaintiff incurred did not exceed 8% of the loan value. As a result, HOEPA was not triggered and therefore, Plaintiff cannot state a claim for violation of the statute. Defendant Interfirst is entitled to judgment as a matter of law on this claim.

### 3. Remaining Claims

For the reasons stated above, Plaintiff's federal claims, both individually and on behalf of a purported class, against Defendant Interfirst are not viable. The Court notes that Defendant Brookstone has not moved for dismissal or summary judgment of Plaintiff's claims. The Court's rulings as to Plaintiff's HOEPA and § 2603 RESPA claims apply to Defendant Brookstone as well. Plaintiff has a claim against Brookstone under § 2607 of RESPA, which is the only remaining federal claim.

The bulk of Plaintiff's claims against Defendants Interfirst and Brookstone arise under state law for alleged fraud, illegal contract, violation of the Ohio Mortgage Loan Act, R.C. Chapter 1321.52, *et seq.*, and violation of the Ohio Consumer Sales Practices Act, Chapter 1345. Plaintiff invokes this Court's supplemental jurisdiction, 28 U.S.C. § 1367, for these claims.

9

Given the Court's decision with respect to the majority of Plaintiff's federal claims, pursuant to which Plaintiff originally invoked the jurisdiction of this Court, the Court must consider whether continuing to exercise supplemental jurisdiction is appropriate. Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction under the following circumstances:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

It is well-settled that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring them a surer-footed reading of applicable law." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966). The Supreme Court has recognized that supplemental jurisdiction need not be exercised in all cases. It is a "doctrine of discretion, not of plaintiff's right." *Id.* at 726. Thus, district courts are to deal with supplemental claims according to the values of "judicial economy, convenience, fairness and comity." *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988). Indeed, it is appropriate to decline the exercise of supplemental jurisdiction where state law claims substantially predominate over federal claims. *See e.g., Gaines v. Blue Cross Blue Shield of Mich.*, 261 F.Supp.2d 900 (E.D. Mich. 2003).

In this case, given that the vast majority of Plaintiff's remaining claims arise under state law, the Court is of the view that the exercise of supplemental jurisdiction is not appropriate. Issues of state law substantially predominate over the claims from which jurisdiction was

originally invoked in this case. Since the Court has dismissed the majority of Plaintiff's federal law claims, as a matter of comity and promotion of justice between the parties[2], the Court declines to exercise supplemental jurisdiction over the state law claims.

In view of the present case posture, the Court finds the Plaintiff's Motion to Certify this case as a class-action to be without merit. The motion is denied as moot.

### III.

Based on the foregoing, Defendant Interfirst's Motion to Dismiss or, alternatively, for Summary Judgment **(Doc. #57)** is **GRANTED**. Plaintiff's state law claims are dismissed without prejudice so that Plaintiff may pursue the claims in state court if she desires. Plaintiff's Second Motion for Class Certification **(Doc. #50)** is **DENIED as moot**.

**IT IS SO ORDERED.**

9-30-2005
DATE

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE

---

[2]The Court notes that Defendant Brookstone is an Ohio corporation. In the Court's view, allegations of violations of state law against a state incorporated Defendant are best left resolved by state courts.