IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RUTH MORRISON,
    Plaintiff,

v.

BROOKSTONE MORTGAGE
CO., INC., et al.,
    Defendants.

Case No. 2:03-CV-729
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Norah McCann King

### OPINION AND ORDER

This matter is before the Court for consideration of Defendant Brookstone Mortgage Co., Inc.'s Motion for Summary Judgment (Doc. #93) and Defendant ABA AMRO Mortgage Group, Inc.'s Motion for Final Judgment pursuant to Fed. R. Civ. P. 54(b) (Doc. #96). For the reasons that follow, the former motion is granted and the latter motion is denied as moot.

### I.

Plaintiff, Ruth Morrison ["Plaintiff"], brings this action asserting individual and purported class claims as a result of certain fees incurred in a residential real estate mortgage refinancing transaction. The remaining Defendant in this case is Brookstone Mortgage Company ["Brookstone"]. Plaintiff brings an individual claim for alleged violation of the Home Owner's Equity Protection Act ["HOEPA"], part of the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*, and purported class claims for alleged violations of the Real Estate Settlement Procedures Act ["RESPA"], 12 U.S.C. § 2601, *et seq.*, as well as claims for alleged violations of the Ohio

Mortgage Loan Act, R.C. Chapter 1321.52, *et seq.*, the Ohio Consumer Sales Practices Act, R.C. Chapter 1345, fraud and illegal contract. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

Plaintiff, a resident of Zanesville, Ohio, claims that on August 14, 2002, Defendant Brookstone "negotiated and originated a federally-related home refinancing mortgage loan for [Plaintiff] through its ongoing business relationship with Interfirst[1]." (*Second Am. Compl.* at ¶ 10). Plaintiff alleges that the "total points and fees charged [Plaintiff] by Brookstone and Interfirst, as ratified and approved by both, exceeded both $500.00 in amount and 8% of the total loan amount." (*Id.* at ¶ 12). Plaintiff also alleges that she was charged excessively for "split settlement costs paid to obtain a credit report and [fees paid] to business entities not licensed to practice law in this state for preparing legal documents." (*Id.* at ¶ 15). Plaintiff claims that she will pay $211,640.69 over the life of the loan, while the existing mortgage refinanced aggregated only $192,895.57. (*Id.* at ¶ 16).

In its September 30, 2005 *Opinion and Order*, this Court held that, as to Defendant Interfirst, Plaintiff's claims under the RESPA, specifically § 2603 and § 2607, for alleged "excessive credit report charges and the illegal, excessive, and not lawfully earnable document preparation fees" (*Second Am. Compl.* at ¶ 53), were without merit. First, this Court found that § 2603[2] does not create a private cause of action for alleged violation of the provision. Second,

---

[1] Interfirst, whom Plaintiff also named as a Defendant in this case, is a trade name for ABN AMRO Mortgage Group, which funds residential mortgage loans. This Court dismissed Plaintiff's claims against Interfirst in the September 30, 2005 *Opinion and Order* (Doc. #88).

[2] The statute provides for use of a standard form for the statement of settlement costs to be used in connection with real estate transactions in the United States which involve federally related mortgage loans. The statute states, in pertinent part:

2

this Court found that Plaintiff's § 2607 claim failed because there was no allegation that a fee or charge was split with Defendant Interfirst. This Court also held the § 2607 claim remained alive as to Defendant Brookstone, with regard to Plaintiff's claim that Brookstone had improperly shared in the $65.00 credit report charge.

The Court's September 30, 2005 *Opinion and Order* also held that Plaintiff's claim for violation of HOEPA was without merit. Plaintiff's claim was based on the allegation that she was charged over 8% of the loan amount in settlement fees and costs. HOEPA requires certain disclosures be made to consumers regarding a "high cost mortgage." 15 U.S.C. § 1602(aa). A "high cost mortgage" is one involving a transaction with points and fees exceeding the greater of

---

> Such form shall conspicuously and clearly itemize all charges imposed upon the borrower and all charges imposed upon the seller in connection with the settlement and shall indicate whether any title insurance premium included in such charges covers or insures the lender's interest in the property, the borrower's interest, or both. The Secretary [of Housing and Urban Development] may, by regulation, permit the deletion from the form prescribed under this section of items which are not, under local laws or customs, applicable in any locality, except that such regulation shall require that the numerical code prescribed by the Secretary be retained in forms to be used in all localities. Nothing in this section may be construed to require that that part of the standard form which relates to the borrower's transaction be furnished to the seller, or to require that that part of the standard form which relates to the seller be furnished to the borrower.
>
> (b) The form prescribed under this section shall be completed and made available for inspection by the borrower at or before settlement by the person conducting the settlement, except that (1) the Secretary may exempt from the requirements of this section settlements occurring in localities where the final settlement statement is not customarily provided at or before the date of settlement, or settlements where such requirements are impractical and (2) the borrower may, in accordance with regulations of the Secretary, waive his right to have the form made available at such time. Upon the request of the borrower to inspect the form prescribed under this section during the business day immediately preceding the day of settlement, the person who will conduct the settlement shall permit the borrower to inspect those items which are known to such person during such preceding day.

12 U.S.C. § 2603(a), (b).

8% of the total loan amount or $400.00. 15 U.S.C. § 1602(aa)(1)(B). Based on the undisputed evidence of record, Plaintiff's costs at closing were 6.48% of the total loan amount. Thus, the Court dismissed the HOEPA claim, at least against Defendant Interfirst, as it was the only party to have moved for summary judgment. Finally, in the September 30, 2005 *Opinion and Order*, this Court dismissed without prejudice Plaintiff's state law claims pursuant to the authority of 28 U.S.C. § 1367(c).

Defendant Brookstone now moves for summary judgment on Plaintiff's claims and Defendant Interfirst moves for Judgment under Rule 54(b).

## II.

### A. Defendant Brookstone's Motion for Summary Judgment

#### Standard

The procedure for considering whether summary judgment is appropriate, is found in Fed. R. Civ. P. 56(c); this section provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. Kress & Co.*, 398 U.S. 144, 158-59 (1970). Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate however, if the opposing party fails to make a showing

4

sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also, Matsushita Electronic Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

The United States Court of Appeals for the Sixth Circuit has recognized that *Liberty Lobby, Celotex,* and *Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989). The court in *Street* identifies a number of important principles in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479.

In addition, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (quoting *Liberty Lobby*, 477 U.S. at 257). The nonmoving party must adduce more than a mere scintilla of evidence in order to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita*, 475 U.S. at 586). Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* That is, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

## Analysis

As a preliminary matter, the Court addresses Defendant Brookstone's Motion to Strike Plaintiff's Memorandum *contra* the Summary Judgment motion. Plaintiff's response was filed on March 1, 2006 but the deadline was February 22, 2006. Plaintiff concedes missing the deadline but argues against striking the memorandum *contra*. The Court will not strike the memorandum, but the Court cautions Plaintiff's counsel to avoid such tardy filings and, at a minimum, to seek leave to extend deadlines when circumstances do not permit a timely filing. The Defendant's Motion to Strike (Doc. #109) is denied.

Defendant Brookstone moves for summary judgment on Plaintiff's RESPA and HOEPA claims. For the reasons expressed in the Court's September 30, 2005 *Opinion and Order*, the Court concludes that, as to § 2603 of RESPA, summary judgment is warranted since no private cause of action exists under the statute. In addition, summary judgment is warranted on the HOEPA claim because Plaintiff's mortgage is not a "high cost mortgage" for purposes of the statute.

The Court next considers the § 2607 RESPA claim as to Defendant Brookstone. In moving for summary judgment, Brookstone argues that there is no violation of § 2607 because the $65.00 credit reporting fee charge was not split or shared. The charge was comprised of $50.00 for a Residential Mortgage Credit Report and a $15.00 charge for flood insurance certification. (*Affidavit of Teresa Shutts*[3] at ¶¶ 4-5, attached to *Defendant's Motion for Summary Judgment*). Defendant Brookstone points out that the $65.00 fee was not shared with any third party. Brookstone also notes that Plaintiff received a $3,640.69 broker credit toward the

---

[3] Ms. Shutts is the President and sole shareholder of Brookstone Mortgage Co., Inc.

settlement costs, which resulted in a total payment of $13,468.97 or 6.48% of the total loan amount.

In opposing summary judgment on this claim, the Plaintiff argues that the $65.00 fee was a "markup" for the services rendered. According to Plaintiff, such a markup is a violation of § 2607 of RESPA. Plaintiff relies on the deposition testimony of Ms. Shutts to support this allegation. Shutts conceded on deposition that, during the time period when Plaintiff refinanced her loan, the fee for a credit report was less than $50.00 but Brookstone would keep the difference. (*Shutts Depo.* at 126-27). Shutts did not quantify the amounts in this regard and further stated that she was not personally involved in Plaintiff's refinancing transaction[4]. (*Id.* at 29-36).

> Section 8(b) of the RESPA provides:
>
> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. § 2607(b).

The Congressional findings and purpose for enacting RESPA are set forth in 12 U.S.C. § 2601, which provides:

> (a) The Congress finds that significant reforms in the real estate settlement process are needed to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement

---

[4] The actual price Brookstone paid to obtain the credit report for Plaintiff is unknown as the employee who was responsible for Plaintiff's loan has left the company and absconded with company files, including Plaintiff's. (*Reply Memorandum* at 4). Plaintiff's loan closed on August 14, 2002. In discovery, Plaintiff has learned that Defendant obtained 42 credit reports from CBC, the company which supplied Plaintiff's report, in July 2002. Of the 42 reports, 36 cost $5.00 or less for Defendant to obtain. In August 2002, Defendant paid no more than $16.00 for credit reports from CBC.

process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country. The Congress also finds that it has been over two years since the Secretary of Housing and Urban Development and the Administrator of Veterans' Affairs submitted their joint report to the Congress on "Mortgage Settlement Costs" and that the time has come for the recommendations for Federal legislative action made in that report to be implemented.

(b) It is the purpose of this chapter to effect certain changes in the settlement process for residential real estate that will result--
(1) in more effective advance disclosure to home buyers and sellers of settlement costs;
(2) in the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services;
(3) in a reduction in the amounts home buyers are required to place in escrow accounts established to insure the payment of real estate taxes and insurance; and
(4) in significant reform and modernization of local recordkeeping of land title information.

Defendant Brookstone argues that, in order to establish a claim for violation of § 2607, there must be evidence of some involvement by a third party with respect to the $65.00 charge. Since the only parties involved were Defendant and the credit reporting agency, Brookstone argues that there is no violation of § 2607. As the Plaintiff points out, there is a split of authority on this issue. The Court notes that there is no authority from the Sixth Circuit.

There are six Circuit Court of Appeals decisions on whether a "markup[5]," of the type alleged here, constitutes a violation of § 2607(b). The Eighth, Seventh and Fourth Circuits hold that markups do not constitute a "split of fees" or "unearned fees" under § 2607(b). In *Haug v.*

---

[5] The "markup" refers to the greater price Defendant charged Plaintiff for the credit report "without providing an additional service . . . than that which the [Defendant] paid to the third party vendor;" here, the credit reporting agency. *Kruse v. Wells Fargo Home Mortgage, Inc., et al.*, 383 F.3d 49, 53 (2nd Cir. 2004). In contrast, an "overcharge" refers to "services provided by the lender itself but charged to consumers seeking home mortgages for substantially more than the provider's cost." *Id.* In this case, there is no allegation of an overcharge.

8

*Bank of America*, 317 F.3d 832 (8th Cir. 2003), Plaintiffs claimed, *inter alia*, that the charge of $50.00 for a credit report which Defendant purchased from a third party vendor for less than $15.00 constituted a violation of RESPA. The Eighth Circuit disagreed, holding that § 2607(b) "is an anti-kickback provision that unambiguously requires at least two parties to share a settlement fee in order to violate the statute." *Id.* at 836.

> We begin our inquiry into the intended meaning of the statute with the language of the statute itself. *Milk*, 281 F.3d at 766 (citing *McIntosh*, 236 F.3d at 972). "Where the language of a statute is 'unambiguous, the statute should be enforced as written unless there is a clear legislative intent to the contrary.'" *Id.* at 766 (quoting *McIntosh*, 236 F.3d at 792). If the intent of the statute is clear, the judicial inquiry ends. *United States v. S.A.*, 129 F.3d 995, 998 (8th Cir. 1997) (citing *Citicasters v. McCaskill*, 89 F.3d 1350, 1354-55 (8th Cir. 1996)).

*Id.* at 835. The court agreed with the Fourth and Seventh Circuits, which have also held that "the plain language of Section 8(b) requires plaintiffs to plead facts showing that the defendant illegally shared fees with a third party." *Id.* at 836, citing *Boulware v. Crossland Mortgage Corp.*, 291 F.3d 261, 265 (4th Cir. 2002); *Echevarria v. Chicago Title & Trust Co.*, 256 F.3d 623, 626 (7th Cir. 2001). The court further noted that, although it was not necessary to resolving the issue, consideration of the legislative history of § 2607(b) supported the conclusion.

> Congress considered and rejected proposed legislation that would have set a system of price controls for settlement services fees. *See Mercado*, 763 F.2d at 271 (citing 1974 U.S.C.C.A.N. 6549-50). In 1973, two settlement cost bills were introduced to Congress and referred to the Committee on Banking, Housing and Urban Affairs. Senator Brock introduced S. 2228 and Senator Proxmire introduced S. 2288. Although the bills were similar in many respects, they differed with regard to the authority bestowed on HUD and the Veterans Administration ("VA") to regulate settlement service charges. The Proxmire bill would have required HUD to establish maximum amounts for settlement charges on virtually all mortgage transactions within 180 days of enactment. The Brock bill, which Congress ultimately adopted, repealed section 701 of the Emergency Home Finance Act of 1970, which bestowed authority on HUD and the VA to regulate standards for settlement costs. Rather than directly regulating closing

9

> costs by limiting real estate settlement charges, Congress instead chose to "regulate the underlying business relationships and procedures of which the costs are a function." 1974 U.S.C.C.A.N. 6548. In so doing, Congress specifically designed Section 8(b) to eliminate kickbacks and fee splits by "prohibit[ing] a person or company that renders a settlement service from giving or rebating any portion of the charge to any other person except in return for services actually performed." *Id.* at 6551.

*Id.* at 837-38.

The Eighth Circuit rejected the Plaintiffs' argument that § 2607(b) is ambiguous. Thus, the court found it unnecessary to address the 2001 Policy Statement issued by HUD as to the application of § 2607(b)[6]. The Seventh Circuit reached the same conclusion in *Krzalic v. Republic Title Co.*, 314 F.3d 875 (3rd Cir. 2002), observing that "[n]othing is more common than for professionals to reprice the incidental charges that they incur on behalf of their clients." *Id.* at 880 (citing law firms as an example). The court held that § 2607(b) is not a price control statute and is not ambiguous so as to "allow HUD to impose its own 'interpretation' under the aegis of *Chevron*." *Id.* at 881.

> If an agency is to assume the judicial prerogative of statutory interpretation that *Chevron* bestowed upon it, it must use, not necessarily formal adjudicative procedures or its closest nonadjudicative counterpart, which is notice and comment rulemaking . . . but, still, something more formal, more deliberative, than a simple announcement . . . . A simple announcement is too far removed from the process by which courts interpret statutes to earn deference.

---

[6] The Policy Statement was issued in response to the Seventh Circuit's decision in *Echevarria v. Chicago Title & Trust Co.*, 256 F.3d 623 (7th Cir. 2001) which held that § 2607(b) is an anti-kickback provision and, as such, does not apply to markups. In the Policy Statement, HUD states that the provision is not "limited to situations where at least two persons split or share an unearned fee." HUD, *Real Estate Settlement Procedures Act Statement of Policy 2001-1*, 66 Fed. Reg. 53052, 53057 (October 18, 2001).

In a later case, *Krzalic v. Republic Title Co.*, 314 F.3d 875 (7th Cir. 2002), the Seventh Circuit observed that the 2001 HUD Policy Statement "was not adopted in a notice and comment rulemaking proceeding or with any other deliberative formalities . . . ." *Id.* at 877. Like the Eighth and Fourth Circuits, the Seventh Circuit concluded that § 2607(b) is clear on its face and does not prohibit a closing agent from marking up the cost for its services. *Id.* at 880.

10

*Id.* (citations omitted).

Similarly, the Fourth Circuit concluded in *Boulware v. Crossland Mortgage Corp.*, 291 F.3d 261 (4th Cir. 2002), that an overcharge for obtaining a credit report, in the absence of any evidence of the charge being kicked back or split with a third party, is not a violation of § 2607(b). The court held, in relevant part:

> Nothing in § 2601 indicates that RESPA § 8 was intended to eliminate all settlement service overcharges. Instead, its purpose was "to prohibit all kickback and referral fee arrangements whereby any payment is made or thing of value furnished for the referral of real estate settlement business." . . . . If we subjected a settlement service provider to RESPA liability for keeping an overcharge without requiring an allegation that the unearned fee was shared with a third party, "we would radically, and wrongly, expand the class of cases to which RESPA § 8(b) applies."

*Id.* at 268 (citations omitted).

In contrast to this line of reasoning, the Second, Third and Eleventh Circuits have held that markups are a violation of § 2607(b). In *Sosa v. Chase Manhattan Mortgage Corp.*, 348 F.3d 979 (11th Cir. 2003), although the Eleventh Circuit held that Plaintiff failed to state a claim under § 2607(b), the court found that the provision does "create a broad prohibition against fees that serve solely to increase the cost of settlements to consumers." *Id.* at 982. According to the court, the plain language of the statute creates two separate prohibitions:

> *First*, "no person shall give any portion, split or percentage of any charge . . . ."; and *second*, "no person shall accept any portion, split or percentage of any charge . . . ." Giving a portion of a charge is prohibited regardless of whether there is a culpable acceptor, and accepting a portion of a charge is prohibited regardless of whether there is a culpable giver.

*Id.* (emphasis in original).

In *Santiago v. GMAC Mortgage Group, Inc.*, 417 F.3d 384 (3rd Cir. 2005), the court

11

concluded that markups fall within the prohibition of § 2607(b) [section 8(b)] because of the context of § 2607 [section 8 of RESPA].

> The title of Section 8 of RESPA is "Prohibition against kickbacks and unearned fees," and Section 8(a) is titled "Business referrals," and prohibits the acceptance of "any fee, kickback or thing of value" while Section 8(b) is titled "Splitting charges," and prohibits the acceptance of "any portion, split, or percentage of any charge." Thus [the argument] that Section 8(b) applies only to kickbacks is belied by the use of the term "kickback" in Section 8(a) and not in Section 8(b). This use of language suggests that Section 8(b) is meant to provide for a situation other than kickbacks. Further, a reading of Section 8(b) that allows a cause of action for markups is consistent with the title of Section 8 that prohibits both kickbacks and unearned fees.

*Id.* at 389.

The Second Circuit also holds that markups are prohibited by § 2607(b). In *Kruse v. Wells Fargo Home Mortgage, Inc.*, 383 F.3d 49 (2nd Cir. 2004), the court found the provision ambiguous because of the "divergent, but plausible, constructions of the word 'and.'" *Id.* at 58. Thus, the court proceeded to consider whether HUD's 2001 Policy Statement, which states that markups fall within the prohibition of § 2607(b), was entitled to *Chevron* deference. In this regard, the court observed that the Policy Statement was not the product of notice and comment rulemaking. Nevertheless, the court found that this did not prevent the court from giving the interpretation deference under *Chevron* since the Policy Statement was issued pursuant to authority delegated to HUD by Congress and it arose as a result of careful consideration by the agency. *Id.* at 59-60.

Plaintiff in the case at bar urges this Court to follow the rationale of the Second, Third and Eleventh Circuits[7]. After carefully reviewing the foregoing caselaw, and with no guidance

---

[7] The Court notes that, while Defendant Brookstone has not addressed the split of authority on the issue, its position is essentially that of the Fourth, Seventh and Eighth Circuit Courts of Appeals.

12

from the Sixth Circuit on this issue, this Court declines to adopt the reasoning of the Second, Third and Eleventh Circuits. The Court finds the decisions of the Fourth, Seventh and Eighth Circuits to be more persuasive on the issue of whether markups are prohibited by § 2607(b). In the Court's view, the language of the statute is clear and unambiguous.

> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. § 2607(b). The Court finds no ambiguity from use of the word "and" as did the Second Circuit in *Kruse, supra*. Because the statute, on its face, requires that no person "shall give and no person shall accept any portion, split, or percentage of any charge," the statue clearly contemplates the action of some third party in the transaction, which is not the case here. Thus, the Court concludes that the markup of a real estate settlement charge, which does not involve a third party, is not prohibited by § 2607(b).

Further, the Court finds no reason, under a proper *Chevron* analysis, to consider HUD's 2001 Policy Statement. In *Krzalic v. Republic Title Co.*, 314 F.3d 875, 881 (7th Cir. 2002), the court aptly observed:

> If an agency is to assume the judicial prerogative of statutory interpretation that *Chevron* bestowed upon it, it must use, not necessarily formal adjudicative procedures or its closest nonadjudicative counterpart, which is notice and comment rulemaking (as in *Sierra Club v. EPA*, 311 F.3d 853, 858 (7th Cir. 2002)), but, still, something more formal, more deliberative, than a simple announcement. See *Barnhart v. Walton, supra*, 535 U.S. 212; *United States v. Mead Corp.*, 533 U.S. 218, 229-31 (2001). A simple announcement is too far removed from the process by which courts interpret statutes to earn deference.
>
> An interpretation that is not subject to notice and comment under the Administrative

Procedures Act ["APA"], 5 U.S.C. § 553, is not afforded deference under *Chevron*[8]. *United States v. Mead Corp.*, 533 U.S. 218, 226 (2001). "It is fair to assume generally that Congress contemplates administrative action with the effect of law when it provides for a relatively formal administrative procedure tending to foster the fairness and deliberation that should underlie a pronouncement of such force." *Id.* at 230. This is not the case with the 2001 HUD Policy Statement.

In sum, the Court concludes that Defendant Brookstone is entitled to summary judgment on Plaintiff's § 2607 RESPA claim. The Court notes that Plaintiff also alleges state law claims against Brookstone for alleged fraud, illegal contract, violation of the Ohio Mortgage Loan Act, R.C. Chapter 1321.52, *et seq.*, and violation of the Ohio Consumer Sales Practices Act, Chapter 1345. Given the Court's decision with respect to the only remaining federal claim, § 2607 of RESPA, the Court concludes that dismissal without prejudice of the state law claims against Brookstone is appropriate.

Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction under certain circumstances, including when "(3) the district court has dismissed all claims over which it has original jurisdiction." Since the Court has dismissed all federal claims from this case, the Court declines to continue to exercise jurisdiction over the state law claims.

---

[8]In *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 842 (1984), the Supreme Court held that, when determining whether to consider an agency's regulatory interpretation of a statute, the court first considers whether Congress has directly spoken "to the precise question at issue."
If it has, "that is the end of the matter; for the court as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 843 (footnote omitted). If the court determines that Congress has not directly addressed the issue, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* (footnote omitted).

### B. Defendant Interfirst's Motion for Judgment under Rule 54(b)

Following the Court's September 30, 2005 *Opinion and Order*, Defendant Interfirst filed a Motion for entry of Judgment pursuant to Rule 54(b). The rule allows for the entry of final judgment "as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay . . . ." Fed. R. Civ. P. 54(b).

While appropriate at the time the motion was filed, in light of the Court's disposition of the remaining claims in this case, the motion is now moot. The Court will enter final judgment in favor of Defendants Interfirst and Brookstone on Plaintiff's federal claims.

### III.

In light of the foregoing, Defendant Brookstone Mortgage Co., Inc.'s Motion for Summary Judgment (**Doc. #93**) is **GRANTED**. Defendant Brookstone's Motion to Strike (**Doc. #109**) is **DENIED**. Defendant ABA AMRO Mortgage Group, Inc.'s Motion for Final Judgment pursuant to Fed. R. Civ. P. 54(b) (**Doc. #96**) is **DENIED as moot.**

The Plaintiff's federal claims are **DISMISSED with prejudice** and the Clerk is **DIRECTED** to enter Judgment in favor of Defendants on the federal claims. The state law claims are dismissed without prejudice. The Clerk is **DIRECTED** to close this case and remove it from the Court's pending case list.

**IT IS SO ORDERED.**

9-29-2006
DATE

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE

15